IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**JERRY FRANKS,**                                      Case No. 5:18 CV 35

    Petitioner,                                Judge Jack Zouhary

    v.                                            Magistrate Judge James R. Knepp, II

**CHARLES BRADLEY, WARDEN,**

    Respondent.                           REPORT AND RECOMMENDATION

### INTRODUCTION

*Pro se* Petitioner Jerry Franks ("Petitioner"), a prisoner in state custody, filed a petition seeking a writ of habeas corpus under 28 U.S.C. § 2254 ("Petition"). (Doc. 1). Respondent Charles Bradley, Warden of Pickaway Correctional Institution ("Respondent"), filed a Motion to Dismiss (Doc. 7), and Petitioner filed a response in opposition (Doc. 10). The district court has jurisdiction over the Petition under § 2254(a). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(2). (Non-document entry dated February 22, 2018). For the reasons discussed below, the undersigned recommends the Petition be dismissed.

### FACTUAL BACKGROUND

For the purposes of habeas corpus review of state court decisions, findings of fact made by a state court are presumed correct and can only be contravened if the habeas petitioner shows, by clear and convincing evidence, erroneous factual findings by the state court. 28 U.S>C. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. Here, the Ohio Ninth District Court of Appeals set forth the following facts:

On the evening of Sunday, August 4, 1996, Julius Ricky Norman was a guest in the Akron home of Shannon Williams located at 963 Garfield Road. Norman and Williams had dated in the past, and Norman was the father of two of Williams' three young children. Two other adults, Brandy Beckett and Kareem Galvin, were also present. The four adults planned a trip to Cedar Point the following day, and Norman spent the evening barbequing food for the outing on a grill located just outside the kitchen. Two of Williams' children slept on the couch, and the third was asleep in a second floor bedroom. Williams' home was relatively small: the first floor consisted of a living room and kitchen which were separated by a hallway leading to the front door. A second entrance in the kitchen led to the backyard where the grill was located.

As the evening progressed, Norman and the other adults played cards at the kitchen table. Norman sat nearest the door, and periodically left to check the grill. Beckett sat facing the door. The screen door was closed, but unlocked, and the inner door was open.

Between 1:00 and 1:30 a.m., Cheryl Kirksey, who lived on a neighboring street, watched as a car with no lights on pulled up near her home. She observed two men as they got out of the car and ran through neighboring backyards toward Garfield Road. Five minutes later, she heard gunshots and a woman's scream.

As Norman, Williams, Beckett, and Galvin continued to play cards, Beckett saw the screen door open. The first thing she noticed was a shiny silver gun coming through the door. Two men entered the home, Defendant and Toby Dee Brown. As they entered, they screamed for everyone to get down. Beckett ducked around the corner into the hallway and hid behind a couch in the living room. Williams and Galvin fell to the floor in the hallway between the kitchen and the living room. Norman remained in the kitchen.

Defendant, who carried the silver gun, followed Williams and Galvin into the hallway. Brown, who carried a black gun, stayed in the kitchen with Norman. Holding his gun to Galvin's head, Defendant demanded money from Galvin and took forty-two dollars from Galvin's pockets. In the kitchen, Norman and Brown began to scuffle over the gun. Defendant left Galvin and Williams in the hallway and joined Brown in the kitchen area. Seven shots were fired. Norman was shot four times. Three of the wounds were nonfatal if treated, but the fourth ruptured his aorta causing massive bleeding, an immediately fatal injury. Norman died within minutes.

Defendant and Brown fled the scene. As they sped backwards toward an intersection, the first police car arrived on the scene and a chase ensued. The officers pursued the assailants through the city of Akron until their car crashed into the fence surrounding a field at South High School. Both guns were discarded en route. Brown ran across the field; Defendant was apprehended as he crawled away from the car.

(Ex. 9, Doc. 7-1, at 155-58); *State v. Franks*, 1998 WL 696777, at *1 (Ohio Ct. App.)

## PROCEDURAL HISTORY

State Court Conviction

In August 1996, a Summit County Grand Jury indicted Petitioner on one count of Aggravated Murder with an aggravated circumstance specification and firearm specification; two counts of Aggravated Robbery, each with a firearm specification; one count of Aggravated Burglary with a firearm specification; one count of Tampering with Evidence; and one count of Failure to Comply with an Order or Signal of a Police Officer. (Ex. 1, Doc. 7-1, at 5). The Failure to Comply charge was dismissed. (Ex. 2, Doc. 7-1, at 6).

On July 12, 1997, a jury found Petitioner guilty of all charges and specifications. *Id*. On July 22, 1997, during the penalty phase of Petitioner's trial, the jury recommended Petitioner be sentenced to life in prison with parole eligibility after 30 years. (Ex. 3, Doc. 7-1, at 8). On September 10, 1997, the trial court merged the firearm specifications and sentenced Petitioner to life in prison with parole eligibility after 30 years, plus three consecutive years for the firearm specification for Aggravated Murder; ten years imprisonment for each Aggravated Robbery; five years imprisonment for Aggravated Burglary; and five years imprisonment for Tampering with Evidence. (Ex. 4, Doc. 7-1, at 10-11). All sentences were to be served concurrently with the Aggravated Murder sentence, for an aggregate prison term of 33 years to life. *Id*.

Direct Appeal

On October 7, 1997, Petitioner, through new counsel, filed a timely notice of appeal to the Ohio Ninth District Court of Appeals, Summit County, Ohio. (Ex. 5, Doc. 7-1, at 14). In his counseled brief, Petitioner raised three assignments of error:

1. Dual party plea bargains are fundamentally unfair and violate the due process clause of the Fourteenth Amendment to the United States Constitution because they condition the availability of a plea bargain for one defendant on the acceptance by a co-defendant, depriving a defendant of a meaningful opportunity to plea bargain if a co-defendant refuses to accept the plea offer.

2. The evidence presented at trial was insufficient to convict Mr. Franks of Aggravated Murder because the State failed to prove that Mr. Franks was the actual killer, which was an essential element required by R.C. 2929.04(A)(7), thereby violating the Due Process clause of the Fourteenth Amendment.

3. The trial court erred in instructing the jury in such a way that the burden of proving who the principal offender was shifted from the State to Mr. Franks, a violation of the Due Process clause of the Fourteenth Amendment to the United States Constitution.

(Ex. 6, Doc. 7-1, at 17-18) (capitalization altered) (internal citations omitted). The State filed a response in opposition (Ex. 7, Doc. 7-1, at 49), and Petitioner filed a reply (Ex. 8, Doc. 7-1, at 148).

On October 7, 1998, the Ninth District Court of Appeals overruled Petitioner's first and second assignments of error, affirming his Aggravated Murder conviction. (Ex. 9, Doc. 7-1, at 162, 166). *Franks*, 1998 WL 696777, at \*3-5. The court sustained the third assignment of error, reversing the trial court judgment with regard to the aggravated circumstance specification and remanded the case for re-sentencing. (Ex. 9, Doc. 7-1, at 170); *Franks*, 1998 WL 696777, at \*6-7

4

On November 9, 1998, the State filed a notice of appeal to the Ohio Supreme Court under Case No. 1998-2368[1]. (Ex. 29, Doc. 7-1, at 438). On February 3, 1999, the Ohio Supreme Court dismissed the appeal, *sua sponte*, finding no substantial constitutional question presented. (Ex. 10, Doc. 7-1, at 172).

*Remanded Proceedings*

On January 29, 1999, pursuant to the remand order, the trial court resentenced Petitioner on the aggravated murder conviction. (Ex. 11, Doc. 7-1, at 173). The court sentenced Petitioner to twenty years to life in prison, and a mandatory three year firearm specification, to run consecutively. *Id*. Petitioner did not appeal.

*First Delayed Petition for Post-Conviction Relief*

On March 22, 2001, Petitioner, *pro se*, filed a "Delayed Petition for Post-Conviction Relief . . . and/or Delayed Motion for a New Trial". (Ex. 12, Doc. 7-1, at 175). In it, he raised two assignments of error:

[1.] Where Petitioner has discovered Brady/Kyles evidence post appeal, and by operation of law, was prohibited from inspection of the police investigative report before, and during the trial, this matter is proper pursuant to R.C. 2953.21 *et seq*., Crim. Rule 33(A)(2), and (B), and R.C. 2945.80.

[2.] Was Petitioner Jerry Franks denied meaningful cross-examination and the right to be confronted with evidence in possession of the prosecution team, based on the enumerated Brady/Kyles evidence where he was denied an opportunity to cross-examine Kareem Galvin, Shannon Williams and Cheryl Kirksey in relation to statements located within this investigative report, in relation to:

A. Kareem Galvin, Shannon Williams and the victim, were all smoking marijuana shortly before the perpetrators entered Ms. Williams' home, and Petitioner was denied the opportunity to cross-examine these witnesses about their state of mind during trial.

---

1. Respondent notes the Ohio Supreme Court pleadings are no longer available for this case due to age. (Doc. 7, at 5). The court's online docket shows these filings. (Ex. 29, Doc. 7-1, at 438).

5

    B.    Kareem Galvin gave false testimony regarding his purported struggle with this Petitioner wherein, the jury was told Galvin's struggle caused the ski mask to slip from his attacker's face that permitted Galvin's positive in-court identification of this Petitioner at trial, in violation of *Giglio v. United States, supra*.

    C.    Shannon Williams may have testified under a grant of immunity from being prosecuted for possession of a large quantity of various drugs and cash located throughout her home by investigating police officers shortly after the commission of these offenses.

    D.    The State suppressed discovery of a large quantity of drugs that was located throughout Ms. Williams' home, in order to bolster her credibility before the jury, and denied Petitioner the right to be confronted with evidence tending to support the prosecution's theory, as to motive for commission of these crimes as well as, denying the defense the opportunity to determine if, her testimony was induced on a deal to dismiss charges for possessing these drugs.

    E.    Cheryl Kirksey also gave a different account at trial, of what she actually observed on the night of the offenses and this statement differs significantly from her trial testimony, that denied Petitioner to cross-examine her as to what she perceived on the night of the incident *inter alia*, she [relayed] to police that the person she observed running from the scene of the crime, was a woman.

*Id.* at 176 (capitalization and punctuation altered). The State moved to dismiss the Petition and opposed the Motion. (Ex. 13, Doc. 7-1, at 209). On December 12, 2001, the trial court found the Petition was untimely, and Petitioner failed to establish that he was "unavoidably prejudiced from the discovery of the facts" on which he relied to justify the delay, as required by Ohio Revised Code § 2953.23(A). (Ex. 14, Doc. 7-1, at 244-45). The court granted the State's Motion to Dismiss the Petition, and dismissed Petitioner's Motion for New Trial as untimely. *Id.* at 245. Petitioner did not appeal the decision.

    *Second Delayed Petition for Post-Conviction Relief*

On October 25, 2016, Petitioner, *pro se*, filed a second Delayed Petition for Post-Conviction Relief. (Ex. 15, Doc. 7-1, at 246). In it, he raised three assignments of error:

6

1. Petitioner was denied due process of law and a fair trial under *Brady v. Maryland*, 373 U.S. 83 (1983), because the prosecution withheld exculpatory ballistics evidence and ballistics reports and findings; which later became manifest at his co-defendant's trial, yet remains withheld from him to this date.

2. Petitioner was denied the effective assistance of counsel when counsel failed to properly investigate his case and subject it to meaningful adversarial testing to his prejudice, because such deficient performance allowed the prosecution to withhold favorable material and impeachment evidence that inhibited an ability to prove the existence of reasonable doubt in favor of a conviction to a lesser included offense.

3. Petitioner was denied a fair trial, confrontation and due process of law under a retroactive application of *Crawford v. Washington*, 541 U.S. 36 (2004), and *Danforth v. Minnesota*, 552 U.S. 264 (2008) when denied the right to impeach his co-defendants grossly inconsistent statements to police and testimony at his own trial.

*Id.* at 262, 265, 267 (capitalization and punctuation altered). The State filed a memorandum in opposition (Ex. 16, Doc. 7-1, at 290), and Petitioner replied (Ex. 17, Doc. 7-1, at 293). On January 20, 2017, the trial court denied the Petition, finding it lacked jurisdiction because Petitioner had not met his burden under Ohio Revised Code § 2953.23(A)(1). (Ex. 18, Doc. 7-1, at 302).

On February 17, 2017, Petitioner, *pro se*, filed a notice of appeal to the Ohio Ninth District Court of Appeals, Summit County. (Ex. 19, Doc. 7-1, at 303). In his brief, Petitioner raised four assignments of error:

1. The trial court erred and abused judicial discretion violating the supremacy, due process, and equal protection clauses, U.S. Constitution, denying the delayed Petition for Post-Conviction Relief (Ohio Rev. Code § 2953.23(A)(1)(a)&(b)) without a hearing on jurisdictional grounds by refusing to accept that *Martinez v. Ryan*, **as extended** in *Travino v. Thaler*, and made binding by *Montgomery v. Louisiana*, **recognized new federal and state rights in state post-conviction relief procedures that are the equivalent and on the same footing with the rights associated with a direct appeal that applies retroactively**.

2. The trial court erred and abused judicial discretion violating the supremacy, due process, and equal protection clauses, U.S. Constitution, denying the delayed Petition for Post-Conviction Relief (Ohio Rev. Code § 2953.23(A)(1)(a)&(b)) without a hearing on jurisdictional grounds by refusing to find **the denial of**

     **post-conviction discovery procedures** are unconstitutional in the wake of *Travino* and *Montgomery* decisions, as such precludes indigent unrepresented petitioners from meaningfully pursuing and presenting *Brady v. Maryland* and *Strickland v. Washington* claims that are based upon withheld exculpatory evidence outside the record that is needed to be obtained in order to meaningfully present and support the petition in accordance with law.

3. The trial court erred and abused judicial discretion violating the supremacy, due process, and equal protection clauses, U.S. Constitution, denying the delayed Petition for Post-Conviction Relief (Ohio Rev. Code § 2953.23(A)(1)(a)&(b)) without a hearing on jurisdictional grounds when Petitioner proved he was ***more than*** "unavoidably prevented from discovery of the facts upon which the Petitioner must rely to present the claim for relief" in exclusion of reasonable diligence **because the exculpatory evidence in subject is still being withheld to this date without a means of accessing and obtaining it, thereby preventing any ability at exercising reasonable diligence and meaningful presentation through such impediment**.

4. The trial court erred and abused judicial discretion violating the supremacy, due process, and equal protection clauses, U.S. Constitution, denying the delayed Petition for Post-Conviction Relief (Ohio Rev. Code § 2953.23(A)(1)(a)&(b)) without a hearing on jurisdictional grounds in an objectively unreasonable manner by refusing to accept *Crawford v. Washington* was made retroactive through *Danforth v. Minnesota*; to which was also affected by *Montgomery v. Louisiana* concerning the new retroactive constitutional rights in state post-conviction procedure combined with the state court's duty to enforce the supreme federal law **in the collateral proceedings**.

(Ex. 20, Doc. 7-1, at 316-17) (emphasis in original) (capitalization altered). The State filed a brief in response. (Ex. 21, Doc. 7-1, at 350). On August 2, 2017, the Ohio Ninth District Court of Appeals overruled Petitioner assignments of error and affirmed the trial court. (Ex. 22, Doc. 7-1, at 377); *State v. Franks*, 95 N.E.3d 773 (Ohio Ct. App. 2017).

     On September 5, 2017, Petitioner, *pro se*, filed a notice of appeal with the Ohio Supreme Court. (Ex. 23, Doc. 7-1, at 387). In his memorandum in support, he raised four propositions of law:

1. Whether *Trevino v. Thaler*, 133 S. Ct. 1911, 1921 (2013), and the application of the Supremacy Clause in *Montgomery v. Louisiana*, 136 S. Ct. 718, 731-32 (2016), recognized new federal or state rights in post-conviction proceedings under Ohio Rev. Code § 2953.23(A)(1)(a)&(b), that apply retroactively.

8

2. Whether the denial of post-conviction discovery procedures is a violation of due process and equal protection of laws when *Trevino* and *Montgomery* places the State's post-conviction relief procedures on the same footing at the State's direct appeal process, when the withheld evidence is incumbent upon proving the *Brady v. Maryland*, 373 U.S. 83 (1963) and *Strickland v. Washington*, 466 U.S. 688 (1984) federal constitutional *collateral* claims.

3. Whether a *Brady* due process violation precludes a reasonable diligence defense as defined by *State v. Johnston*, 39 Ohio St. 3d 48, 57-62, 529 N.E. (2d) 898, 908-12 (1988), when no post-conviction discovery procedures exist to enable an indigent petitioner to overcome such an impediment in order to prove the *Brady* violation "by being provided such material" through such collateral proceedings.

Whether *Crawford v. Washington*, 541 U.S. 36 (2004) through *Danforth v. Minnesota*, 552 U.S. 264 (2008), applies retroactively on collateral review, and whether its application is binding in State post-conviction relief through the Supremacy Clause, as announced in *Montgomery v. Louisiana*.

(Ex. 24, Doc. 7-1, at 390). The State waived response. (Ex. 25, Doc. 7-1, at 418). On December 6, 2017, the Ohio Supreme Court declined jurisdiction pursuant to Supreme Court Practice Rule 7.08(B)(4). (Ex. 26, Doc. 7-1, at 419).

## FEDERAL HABEAS CORPUS

The instant Petition was filed on December 27, 2017[2] and challenges Petitioner's convictions and resulting sentences. (Doc. 1). Petitioner raises three grounds for relief:

**GROUND ONE**: Petitioner was denied due process of law and a fair trial under *Brady v. Maryland*, 373 U.S. 83 (1983), because the prosecution withheld exculpatory ballistics evidence and ballistics reports and findings; which later became manifest at his co-defendant's trial, yet remains withheld from him to this date.

**GROUND TWO**: Petitioner was denied the effective assistance of counsel when counsel failed to properly investigate his case and subject it to

---

2. Pursuant to the prison mailbox rule, a *pro se* prisoner's pleading "is deemed filed when the inmate gives the document to prison officials to be mailed." *In re: Prison Litig. Reform Act*, 105 F.3d 1131, 1132 (6th Cir. 1997) (citing *Houston v. Lack*, 487 U.S. 266, 270 (1988)). *See* Doc. 1, at 16 (representing that Petition was placed in the prison mailing system on December 27, 2017).

9

>   meaningful adversarial testing to his prejudice, because such deficient performance allowed the prosecution to withhold favorable material and impeachment evidence that inhibited an ability to prove the existence of reasonable doubt in favor or a conviction to a lesser included offense.
>
> **GROUND THREE**: Petitioner was denied a fair trial, confrontation and due process of law under a retroactive application of *Crawford v. Washington*, 541 U.S. 36 (2004), and *Danforth v. Minnesota*, 552 U.S. 264 (2008), when denied the right to impeach his co-defendant's grossly inconsistent statements to police and testimony at his own trial.

(Doc. 1, at 8, 10, 12) (capitalization altered).[3]

## DISCUSSION

Respondent contends the Petition must be dismissed as time-barred under 28 U.S.C. § 2244(d)(1)(A), or alternatively under § 2244(d)(1)(D). (Doc. 7, at 12). In the opening paragraph of his Reply, Petitioner states generally that the Petition is not time barred under § 2244(d)(1)(A), and "invokes the exemptions of Title 28 U.S.C. 2244(d)(1)(B)-(D) and (2). . . as [has] been explained in this delayed/second petition for post-conviction relief" (Doc. 10, at 1). For the reasons discussed below, the undersigned recommends the Petition be dismissed.

Statute of Limitations

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides for a one-year period during which a prisoner in state custody may file a petition for habeas relief in federal court. 28 U.S.C. § 2244(d)(1). The limitation period begins with any of the following scenarios, whichever is latest:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

---

3. Petitioner also submitted supporting facts with each ground for relief. *See* Doc. 1, at 8-13.

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

*§ 2244(d)(1)(A)*

Respondent asserts 28 U.S.C. § 2244(d)(1)(A), is the appropriate point of reference. (Doc. 7, at 15). As noted above, Petitioner rebuts this argument only by stating the starting point should be calculated under § 2244(d)(1)(B)-(D). (Doc. 10, at 1).

Under § 2244(d)(1)(A), cases become final when the time to file an appeal has expired. *Lawrence v. Florida*, 549 U.S. 327, 333 (2007). Although the statute of limitations is "not jurisdictional," it "effectively bars relief absent a showing that the petition's untimeliness should be excused based on equitable tolling and actual innocence." *Akrawi v. Booker*, 572 F.3d 252, 260 (6th Cir. 2009). On February 3, 1999, the Ohio Supreme Court dismissed Petitioner's appeal. (Ex. 10, Doc. 7-1, at 172). Petitioner had 90 days thereafter to petition for a writ of certiorari to the United States Supreme Court, and his statute of limitations under § 2244(d) tolled during this period. *See Freeman v. Tibbals*, 83 F. App'x 707, 708 (6th Cir. 2003); *Abela v. Martin*, 348 F.3d 164, 172 (6th Cir. 2003). Thus, the conviction became final on May 4, 1999, and the statute of limitations began running the following day—May 5, 1999. It expired one year later, on May 5, 2000. *See* Fed R. Civ. P. 6(a); *Bronaugh v. Ohio*, 235 F.3d 280, 285 (6th Cir. 2000). Therefore, the Petition—filed December 27, 2017—is time-barred under § 2244(d)(1)(A) absent statutory or equitable tolling, or a showing of actual innocence.

11

The undersigned first turns to whether Petitioner is entitled to a later start date under § 2244(d)(1)(B)-(D), and then addresses tolling.

*§ 2244(d)(1)(B)*

In his Reply, Petitioner "invokes the exemptions of Title 28 U.S.C. 2244(d)(1)(B)-(D) and (2). . . as [has] been explained in this delayed/second petition for post-conviction relief". (Doc. 10, at 1). Respondent does not address a § 2244(d)(1)(B) limitation period in the Motion to Dismiss.

Under § 2244(d)(1)(B), the limitation period begins on "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed". 28 U.S.C. § 2244(d)(1)(B). Petitioner must show "'a casual relationship between the unconstitutional state action and being prevented from filing the petition.'" *Winkfield v. Bagley*, 66 F. App'x 578, 583 (6th Cir. 2003) (quoting *Dunker v. Bissonnette*, 154 F. Supp. 2d 95, 105 (D. Mass. 2001)).

To support a § 2244(d)(1)(B) calculation, Petitioner loosely references the explanation he provided in his second petition for post-conviction relief. (Doc. 10, at 1).[4] Petitioner does not direct this Court to a particular page or argument in the post-conviction petition, and does not elaborate on the argument any further in his Reply. *Id.* Looking to the memorandum in support of his second petition for post-conviction relief (Ex. 15, Doc. 7-1), Petitioner asserted the State did not provide him with a co-defendant's trial transcript which prevented him from impeaching their credibility at his trial, *id.* at 253, 259. Further, Petitioner asserted the State also withheld potentially exculpatory ballistic evidence. *Id.* at 255, 259. Petitioner argued he was unable to "attach

---

4. This Court liberally construes the pleadings of *pro se* litigants, as is the case here. *See Payne v. Chandler*, 162 F.3d 1162, 1163 (6th Cir. 1998); *see also Haines v. Kerner*, 404 U.S. 519, 521 (1972) (holding that *pro se* litigants are held to a less stringent standard than formal pleadings drafted by lawyers).

'withheld' exculpatory documentary evidence [where] the law does not provide a means to obtain when indigent and incarcerated". *Id*. at 260. Petitioner concluded he could not exercise reasonable diligence when he was unable to exercise discovery in the post-conviction matter. *Id*.

Petitioner's argument here is unpersuasive. In order to achieve a later start date under § 2244(d)(1)(B), he must prove that an impediment *prevented* him from filing his federal habeas petition. Other circuits have addressed such impediments where relief was warranted. *See Critchley v. Thaler*, 586 F.3d 318, 321 (5th Cir. 2009) (finding an impediment under § 2244(d)(1)(B) when a county clerk's office failed to timely file post-conviction petitions); *Earl v. Fabian*, 556 F.3d 717, 719 (8th Cir. 2009) (finding an impediment under § 2244(d)(1)(B) where petitioner was transferred to another facility and the State did not inform his lawyer which greatly hindered their ability to communicate); *Whalem/Hunt v. Early*, 233 F.3d 1146, 1148 (9th Cir. 2000) (finding a § 2244(d)(1)(B) impediment where prisoner was prevented from accessing a law library which prevented him from learning of the limitation period). Here, the State's denial of a transcript from a co-defendant's trial or ballistic evidence did not *prevent* Petitioner from filing a habeas petition. *See Lloyd v. Van Natta*, 296 F.3d 630, 633 (7th Cir. 2002) (holding that a petitioner was able to effectively raise a prosecutorial misconduct issue in a federal habeas corpus petition without transcripts). As such, the undersigned finds Petitioner has not shown he is entitled to a later start date under § 2244(d)(1)(B).

*§ 2244(d)(1)(C)*

The limitation period under § 2244(d)(1)(C) is calculated from "the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2244(d)(1)(C). In Ground Three, Petitioner asserts he was "denied a fair trial,

confrontation and due process of law under a retroactive application of *Crawford v. Washington*, 541 U.S. 36 (2004), and *Danforth v. Minnesota*, 552 U.S. 264 (2008)." (Doc. 1, at 12). Petitioner also argues *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413 (2013) are applicable to his case. (Doc. 10, at 17).

If Petitioner attempts to argue his statute of limitations should be calculated under § 2244(d)(1)(C) on the date he discovered these cases, this argument fails. A plain reading of § 2244(d)(1)(C) requires that the limitation period is calculated from "the date on which the constitutional right asserted was initially recognized by the Supreme Court . . . *and made retroactively applicable* to cases on collateral review". (emphasis added). In other words, the statute of limitations begins to run under §2244(d)(1)(C) on the date of the applicable court decision, not the date on which Petitioner discovered that decision.

Petitioner is correct that *Danforth* made *Crawford* retroactively applicable on collateral review, however, *Danforth* was decided over ten years ago – February 20, 2008. *Danforth*, 552 U.S. at 264. Thus, even assuming *Danforth* could re-start Petitioner's statute of limitations clock, it would have expired on February 20, 2009. Accordingly, even assuming there was merit to Petitioner's argument for a later start date based on *Danforth*, he cannot use it to escape the statute of limitations bar. Similarly, even assuming *Trevino* or *Martinez* announced a new constitutional rule that applied retroactively[5], and even assuming it were a rule applicable to Petitioner's case[6],

---

5. "Neither *Martinez* nor *Trevino* announced a new rule of *constitutional* law, and neither has been made retroactive to cases on collateral review." *Clark v. Davis*, 850 F.3d 770, 784 (5th Cir. 2017) (emphasis in original); *see also Moreland v. Robinson*, 813 F.3d 315, (6th Cir. 2016) ("[T]he *Martinez* rule was equitable, not constitutional . . . *Trevino*, which was merely an application of the rule established in *Martinez*, also did not create a new rule of constitutional law.") (internal citation omitted).

6. *Martinez* and *Trevino* held that the ineffective assistance of post-conviction counsel can establish "cause" to excuse the procedural default of a defendant's substantial claim of ineffective

14

the Petition would still be untimely because *Trevino* was decided in 2013 – nearly four years before the Petition was filed. Thus, Petitioner cannot show entitlement to a later start date under § 2244(d)(1)(C).

*§ 2244(d)(1)(D)*

Alternatively, Respondent asserts § 2244(d)(1)(D) as a point of reference. (Doc 7, at 16). Under § 2244(d)(1)(D), Petitioner "must show that he could not have discovered the factual predicate for his habeas claim earlier through the exercise of due diligence." *See Bey v. Capello*, 525 F. App'x 405, 408 (6th Cir. 2013) (citing *DiCenzi v. Rose*, 452 F.3d 465, 471 (6th Cir. 2006)).

In this case, Petitioner asserts he is entitled to a later start date under § 2244(d)(1)(D), but makes no specific arguments in support, and does not offer a date or circumstance triggering his discovery of the factual predicate for his claim. (Doc. 10, at 1). The Court could interpret Petitioner's assertion within the post-conviction memorandum that – at an unspecified time – he learned the State did not provide him with a co-defendant's trial transcript or ballistic evidence. (Ex. 15, Doc. 7-1, at 253, 259). Petitioner raises the issue of transcript and ballistic evidence again in Ground One of this Petition. (Doc. 1, at 8). Regardless, Petitioner has not shown how he was in any way diligent in discovering the co-defendant's transcripts or ballistic evidence. As the Ninth District Court of Appeals put it, "[Petitioner] does not explain how he was unavoidably prevented from obtaining the information he now claims is exculpable for more than eighteen years." (Ex. 22, Doc. 7-1, at 385). And Respondent correctly asserts, it is incumbent upon Petitioner – not the

---

assistance at trial where state procedural law makes it highly unlikely that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal. *See Martinez*, 566 U.S. at 9; *Trevino*, 569 U.S. at 429. Here, Petitioner acted *pro se* in both of his post-conviction proceedings, and thus he could not raise a claim of ineffective assistance of post-conviction counsel claim in any event.

State – to prove that he exercised due diligence. (Doc. 7, at 16) (citing *DiCenzi v. Rose*, 452 F.3d 465, 471 (6th Cir. 2006)).

Since Petitioner has failed to show he acted with the diligence necessary to discover the underlying factual predicate of his claim, the undersigned finds he is not entitled to a later start date under § 2244(d)(1)(D).

Tolling

Because Petitioner has not demonstrated entitlement to a later start date under §2244(d)(1)(B)-(D), his Petition remains time-barred under §2244(d)(1)(A) unless he can show tolling, or actual innocence.

*Statutory Tolling*

A properly filed post-conviction petition can serve to toll the statute of limitations in habeas cases. 28 U.S.C. § 2244(d)(2). A state application for post-conviction relief is "properly filed" within the meaning of § 2244(d)(2) "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings, such as those prescribing the time limits for filing." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). State courts are the final arbiters of whether a state collateral action is considered timely, and thus, properly filed. *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005). A state post-conviction petition rejected by the state court on timeliness grounds is not properly filed and, therefore, it cannot serve as the basis for statutory tolling. *Allen v. Siebert*, 552 U.S. 3, 5 (2007). Importantly, once the AEDPA statute of limitations expires, state collateral review proceedings can no longer serve to avoid the time-bar. *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003) ("The tolling provision does not, however, revive the limitations period (i.e., restart the clock at zero; it can only serve to pause a clock that has not yet fully run.") (internal quotation and citation omitted).

Statutory tolling does not help Petitioner in this case. As noted above, his conviction became final on May 4, 1999, and expired one year later, on May 5, 2000. (Ex. 10, Doc. 7-1, at 172). Petitioner did not file his first Petition for Post-Conviction Relief, and Motion for New Trial until March 2001 – *after* the limitations period had run. (Ex. 12, Doc. 7-1, at 175). Further, his second Post-Conviction Relief Petition was not filed until October 2016 – almost fifteen years after the limitation period ran. (Ex. 15, Doc. 7-1, at 246). Because all of these actions occurred after the AEDPA statute of limitations had run, none of them can serve as a basis for statutory tolling. *Vroman*, 346 F.3d at 602; *Jurado v. Burt*, 337 F.3d 638, 641 (6th Cir. 2003) ("a motion for state post-conviction review that is filed following the period for seeing habeas relief cannot toll that period because there is no period remaining to toll"). Absent equitable tolling, therefore, the Petition is untimely.

*Equitable Tolling*

Petitioner has the burden of establishing his entitlement to equitable tolling. *See Jurado*, 337 F.3d at 642. To meet this burden, Petitioner must show that: 1) extraordinary circumstances prevented the filing of his petition, and 2) he was diligent in pursuing his case. *Holland v. Florida*, 560 U.S. 631, 649 (2010). Equitable tolling should only be granted "sparingly". *Solomon v. United States*, 467 F.3d 928, 933 (6th Cir. 2006). Further, in the extreme circumstance, a petitioner can prove his entitlement to equitable tolling through a showing of actual innocence under the "miscarriage of justice" standard. *Schlup v. Delo*, 513 U.S. 298 (1995). A showing of actual innocence requires "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Id*. at 324.

Here, as noted above, Petitioner has not made an argument showing his discovery of the existence of transcript or ballistic evidence in any way *prevented* him from filing his habeas petition, nor has Petitioner shown he was diligent in discovering this evidence. *See Lawrence v. Florida*, 549 U.S. 327, 336 (2007) (holding that, to benefit from equitable tolling, a petitioner must show he was diligently pursuing his rights, and some "extraordinary circumstance" stood in his way). Further, the record demonstrates Petitioner's lack of diligence given the fifteen year gap between the filing of Petitioner's first and second post-conviction relief petitions during which he took no action. *See* Ex. 12, Doc. 7-1, at 175; *see also* Ex. 15, Doc. 7-1, at 246. Finally, Petitioner has not provided evidence to suggest, actual innocence in this case. Thus, the undersigned finds Plaintiff is not entitled to equitable tolling here.

Under § 2244(d)(1)(A), Petitioner's AEDPA statute of limitations expired on May 5, 2000. Because he has not shown an entitlement to a later start date, tolling, or demonstrated actual innocence, his Petition, filed December 27, 2017, is untimely.

## CONCLUSION AND RECOMMENDATION

Following review, and for the reasons stated above, the Court recommends the Petition be dismissed.

s/James R. Knepp, II<br>United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).